UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WICONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

v.        11CR193

TYRONE MCMILLIAN,

        Defendant.

## THE PROTECTIVE SWEEP IN THIS MATTER VIOLATED THE DEFENDANT'S FOURTH AMENDMENT RIGHTS

NOW COMES, the above-named defendant, Tyrone McMillian, upon all proceedings had herein and hereby requests that this Honorable Court find that the protective sweep in this matter violated the defendant's Fourth Amendment Right to unreasonable search and seizures. Furthermore, the defendant would request that any and all evidence seized on that date be suppressed and any evidence or leads that were discovered as a result of the evidence that was seized on that date be suppressed as fruits of the poisonous tree. Furthermore, since the observations from the protective sweep formed the basis to support a search warrant in this matter, the defendant would also request that if the protective sweep in this matter was in violation of his Rights that the defendant reserves his right to challenge the search warrant on this basis. This request is based upon the following information and memorandum of law.

## SUMMARY OF THE FACTS

On July 6, 2011 Milwaukee Police Department went to 6333 West Darnell Avenue, Brown Deer, Wisconsin. This residence was occupied by Tyrone McMillian and Ashley Knueppel. On that date, members of the Milwaukee Police Department went to that residence to check for a subject wanted for a Homicide. The homicide was in 2005 and involved two victims. The Milwaukee Police indicated that they had received information from an Informant, Todd Carter, that Tyrone McMillian had related that he had to "pop" the victims over an argument and that McMillian indicated that the argument was over a failed lease contract. The reports indicate that there was a Suspect Card for Tyrone McMillian. The undersigned is aware that Todd Carter and others supplied this information on April 30, 2009, May 27, 2009 and February 1, 2010. It should also be noted that on one prior occasion, law enforcement approached Mr. McMillian and he spoke with them without any incidents of violence or problems.

Upon arrival at the residence, Office Shull went to the side door and knocked on the door. He announced "Milwaukee Police, Ashley come to the door." The reports indicate that a white female came to the door and she was later identified as Ashley Knueppel. Officer Shull asked her if she lived in the home and she indicated that she did. He further asked who was also in the home and she replied that it was just her and her boyfriend. Shull inquired who that was and Ms. Knueppel indicated that it was "Tyrone." Officer Shull then yelled into the house – "Tyrone Milwaukee Police Department, come to the door." Officer Shull's reports indicate that he stated this 3 times and Mr. McMillian finally came to the door. Officer Shull then placed Mr. McMillian into custody in the threshold of the residence. A protective sweep of the residence was

conducted for any other suspects. There were no other suspects located. However during the protective sweep of the residence, Officer Witkowski observed a black rifle case underneath the bed in what appeared to be a child's bedroom.[1] Finally, prior to taking Mr. McMillian to the jail, officers noticed that he did not have any shoes on. Mr. McMillian indicated that he wanted a specific pair that was located in his bedroom. An officer accompanied Ms. Knueppel to the bedroom. The officer bent over to pick up the shoes and noticed a blue gun case and a grey gun case approximately 2 feet away from where he was. He indicated that the gun cases were between the bed and the small nightstand with the blue case on the bottom and the gray case on top. Furthermore, he indicates that the only words that he could make out were HK Arms. He proceeded to walk out of the room.

## PROTECTIVE SWEEP WAS A VIOLATION OF THE FOURTH AMENDMENT

The Fourth Amendment protects "[t]he right of people to be secure in their person, houses, papers and effects, against unreasonable searches and seizures." "Unlawful entry into a home is the 'chief evil" against which the provision protects." State v. Guillen, 223 Ariz. 314, 316, 10, 223 P.3d 658, 660 (2010). In Michigan v. Fisher, 130 S.Ct. 546, 548, 175 L.Ed.2d 410 (200), the Court stated that police officers, typically must obtain a warrant to enter a home, but because of the "touchstone of the Fourth Amendment … is reasonableness," there are several exceptions to the warrant requirement. One such exception is the protective sweep. This was first recognized in Maryland v. Buie, 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990). In Buie, the

---

[1] The Defendant is a convicted felon for a felony offense in Minnesota on March 5, 2003.

Court held that "incident to an arrest the officers can as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack would be immediately launched." Buie, 494 U.S. at 334, 110 S.Ct. 1093. However in order to conduct a broader sweep, " there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent office in believing that the area to be swept harbors an individual posing danger to those on the arrest scene." Id.

Buie further addressed the two types of limited warrantless searches. The first type involves the area immediately adjacent to the place of arrest. Id. The second type is the adjoining areas where persons posing a danger might be found. Id. The protective sweep doctrine applies to law enforcement officers once they are inside an area, including a home. "Once inside an area a law enforcement officer may perform a warrantless 'protective sweep,' that is, 'a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers and others." State v. Sanders, 311 Wis.2d 257, 752 N.W.2d 713 (2008).

In this matter, the reports indicate that Mr. McMillian was arrested in the threshold of the doorway of the residence. He was arrested on a suspect card for a homicide that occurred on October 19, 2007. The information that was the basis for the suspect card was information that was received from witnesses/informants on April 30, 2009, May 27, 2009 and February 1, 2010.

After McMillian was arrested, officers entered the home to conduct a protective sweep. Officer Witkowski indicates in his reports that a sweep was conducted for any possible suspects. Office Shull indicates in his report that a sweep was conducted to look

4
Case 2:11-cr-00193-CNC   Filed 10/21/11   Page 4 of 5   Document 27

for any other actors within the house. It was during this sweep that Officer Witkowski observed a black plastic rifle case.

The defendant in this matter asserts that there was no basis to perform a "protective sweep" of the residence. Mr. McMillian was arrested in the threshold of the doorway on a suspect card. As a result, the police had no specific and articulable facts that there were other "suspects" of this homicide located in the residence. Furthermore, since Mr. McMillian was arrested in the threshold of the doorway on information that was dated for crimes that occurred approximately four years ago, there was no information to suggest that there might be exigent circumstances that were present to protect evidence of the homicides in the residence. Therefore, the undersigned submits that there is no basis for law enforcement to have performed a protective search of the residence. As a result, the undersigned would submit that law enforcement violated his Fourth Amendment Right to unreasonable search and seizure.

BOYLE, BOYLE & BOYLE, S.C.

By: /s/ Bridget E. Boyle
    BRIDGET E. BOYLE
    Attorney for Defendant

    State Bar ID No. 1024879
    Boyle, Boyle & Boyle, S.C.
    2051 West Wisconsin Avenue
    Milwaukee, WI 53233
    bboyle@boylelaw.com
    Telephone: (414) 343-3300
    Facsimile: (414) 343-3310

5
Case 2:11-cr-00193-CNC   Filed 10/21/11   Page 5 of 5   Document 27