UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WICONSIN

UNITED STATES OF AMERICA,

           Plaintiff,

v.                                                     11CR193

TYRONE MCMILLIAN,
           Defendant.

## THE PROTECTIVE SWEEP IN THIS MATTER VIOLATED
## THE DEFENDANT'S FOURTH AMENDMENT RIGHTS

NOW COMES the defendant and submits the following response to the Government's Response to the pretrial motions in this matter.

**PROTECTIVE SWEEP**

The Government agrees that the protective sweep that was performed in this matter was unlawful. As a result the Government agrees that the inclusion of the black plastic rifle case must be suppressed. However the Government does not agree that the observations of the additional two guns cases should be suppressed.

It should be noted at the outset of this response that the Government is incorrect on a couple of facts. First off, the Government indicates that after McMillian requested his Air Jordan flip flops, Officer Shull walked with Ms. Knueppel to the bedroom. The Government suggests that when Shull bent down to pick up the shoes he noticed the gun cases were between the bed and a nightstand. The Government submits that after the

discovery, MPD froze the scene and obtained the search warrant. This is incorrect. The undersigned submits that the scene was frozen prior to Shull walking with Ms. Knueppel to the bedroom. This is the reason that Shull had to walk with her.

The Government also suggests that the gun cases that were found in the bedroom were not disturbed. The undersigned does not believe that this is an accurate statement. The reports clearly indicate that when Shull bent over to pick up the flip flops that he was only able to see "HK Arms" on the gun case. It is also stated in the police report by Shull that he observed a blue gun case and a grey gun case. He indicated in his report that the gun cases were between the bed and the small nightstand with the blue gun case and a grey gun case two feet from him. He indicated that the gun cases were between the bed and the small nightstand with the blue case on the bottom and gray case on top. He indicated that the only words that he could make out were HK Arms. Based upon the undersigned belief of where these items were located – between the dresser and the bed – there was no way that Shull could have seen "HK Arms" because it appears that this was located on the front portion of the gun case. The portion that would have been facing either the bed itself or the dresser. Therefore, the undersigned would submit that the only way in which Shull was to have seen the "HK Arms" was if the items had been moved.

The Government is correct that in the undersigned's original filing, it did not challenge specifically the observation of Shull and the gun cases. However, the undersigned was not aware of the fact that the Government was going to take the position that the protective sweep was unlawful. Furthermore, the undersigned did not know that the Government was going to take the position that the scene was frozen after the observation of Shull and the gun cases in the bedroom. The undersigned suggest that

2

Shull should not have entered the home after the unlawful protective sweep. If the house was not frozen prior to him walking with Ms. Knueppel to retrieve the shoes, he should have received consent from her before entering the home. There is no information in the reports to indicate that he received consent from her to enter the home to retrieve the shoes. Therefore, his re-enter into the home was unlawful.

Having stated the above, the undersigned finds it hard to believe that the Milwaukee Police Department would not have run the defendant's criminal history prior to their contact with him. This was a suspect card that was issued for a double homicide and it would seem that good police practice would be for MPD to have run the Defendant before they had contact with him. Therefore, the undersigned believes that it is more probable that MPD knew that he was a convicted felon prior to their entry into the home. If MPD knew that he was a convicted felon prior to their arrival at 6333 West Darnell, it is more believable that the scene was frozen after the original protective sweep based upon the observation of the gun case or the observation of the AK-47 gun in the case that was found in the child's bedroom. So if the scene was frozen after the protective sweep, Ms. Knueppel had no options other than to walk with the officer through the house. She had to allow this to take place due to the fact that the house was controlled by MPD. In other words, she had no ability to consent or to not consent to the officer entering the home which allowed him to observe things in the home.

The undersigned submits that when Officer Shull re-entered her home this was a violation of the Fourth Amendment. One could argue that if there was an absolute need that Mr. McMillian have shoes in order to be transported to the jail and MPD needed to obtain shoes for him, they should be able to walk with the individual in the house to get

the shoes. This type of procedure would ensure the safety of the officers. However, they would need to get consent of the person to enter the home. This would afford the person to exercise their rights and decline to give consent to enter the residence. Ms. Knueppel did not have the option to deny consent to re-enter the home after the protective sweep. As a result, Officer Shull entered the home without consent of Ms. Knueppel and therefore, the evidence that was obtained should be suppressed.

## SEARCH WARRANT ISSUE

The Government argues that the Defendant has no relief from the errors in the search warrant. The Government cites State v. Nicholson, 174 Wis.2d 542, 497 N.W.2d 791 (Ct. App. 1993) as the case that is almost directly on point. The Government correctly notes the facts in that case. However, the undersigned submits that this case is not directly on point to the issue in this matter. Nicholson deals with the proposition that the error that was discovered during the search regarding the address was not fatal to the search warrant. In Nicholson, the police realized during the middle of the search that they had listed the wrong address. The Court of Appeals indicated that because the officers believed that the warrant accurately described the premises, the warrant was "valid when issued and the police were entitled to commence their search." Id. at 547-48. In this matter the police noticed the error before and corrected the error by authorization of the judge. However, the error was not corrected under oath. The undersigned submits that if the police executed the warrant after having knowledge that the error in the address existed, Nicholson would be directly on point. Instead, law enforcement made the decision to contact the judge who authorized the change to a sworn document but the

change was not under oath. Therefore, the search warrant has fatal flaws in it. There is no avenue that exists for law enforcement to take a document that has been sworn to be truthful and accurate before a notary public and change the document after swearing to the truthful nature of the document.

The undersigned relies on State v. Tye, 248 Wis.2d 530, 636 N.W.2d 473 (2001), which discussed the issue of a search warrant and the failure of the officer in swearing to the contents of the warrant. The Court held that the absence of an oath from an affidavit in support of a search warrant was not a technical irregularity and it affected the substantial rights of the defendant. Id. at 540. Furthermore the Court noted that "[a]n oath preserves the integrity of the search warrant process and thus protects the constitutionally guaranteed fundamental right of people to be secure in their persons, houses, papers and effect against unreasonable searches and seizures." Id. at 541.

When Detective Gomez appeared before Judge Kevin Martens, he swore under oath that the residence that was going to be searched was 6633 West Darnell Street. This address was provided numerous times in the application and affidavit. Therefore, Detective Gomez believed and swore under oath that 6633 West Darnell Street was the correct address. The undersigned will readily admit that if 6633 was stated only one time with the remaining references to 6333, this would be a typographical error and there would be little if any challenge to the documents. However, this is not a typographical error. It is an error in the address that was changed by Detective Gomez without being under oath before Judge Martens.

The other concerning aspect of this matter is that Detective Gomez indicated in his affidavit that Officer Jonathan Witkowski observed a black in color AK-47 assault

rifle under an [air] mattress. As stated in previously filed information Officer Witkowski only saw a black rifle case in the child's bedroom. The problem is that someone from MPD opened that rifle case prior to the search warrant being issued. The only information that Officer Witkowski had was that there was a black rifle case. He has no knowledge of what was inside of the case. The case was a Plano brand rifle case from Cabelas. Therefore, there was no manner in which anyone would know what was in the case and if there was a weapon, what type of weapon it was. However it is surprising to find out that Detective Gomez was able to correctly guess that it was an AK-47 assault rifle. The undersigned can only guess that someone opened that gun case and told Detective Gomez that there was an AK-47 assault rifle in the case.

The Government attempts to suggest that this was a gun case that was erroneously identified as an AK-47 assault rifle. This was not an error in identification. The undersigned submits that this was an error that was caused by someone opening up the rifle case. The undersigned knows that this Court is well aware of the law that would prohibit this type of conduct because there is no exception in the law that would allow for the police to open this item without a search warrant. Therefore, the undersigned would submit that the conduct of the police in this matter and the fact that the search warrant was based upon misinformation, erroneous information should result in the exclusion of any and all evidence that was seized in this matter.

**CONCLUSION**

The undersigned would submit that based upon the above issues, there is a need for an evidentiary hearing on these matters. There are factual disputes as to what occurred and what was seen by the officers. Therefore, the undersigned would request an evidentiary hearing on the above issues.

Dated this 7th day of November, 2011.

                                              BOYLE, BOYLE & BOYLE, S.C.

                                              By: /s/ Bridget E. Boyle
                                                  BRIDGET E. BOYLE
                                                  Attorney for Defendant

                                                  State Bar ID No. 1024879
                                                  Boyle, Boyle & Boyle, S.C.
                                                  2051 West Wisconsin Avenue
                                                  Milwaukee, WI 53233
                                                  bboyle@boylelaw.com
                                                  Telephone: (414) 343-3300
                                                  Facsimile: (414) 343-3310